DEPORT HARDWARE CO. v. FIRST NAT. BANK OF PARIS.   (No. 2425.)

(Court of Civil Appeals of Texas. Texarkana. May 25, 1921. Rehearing Denied June 9, 1921.)

1. Appeal and error ⟷230—Assignment of error involving answer to special issue considered, though no objection was made to special issue before charge was read.

An assignment of error that verdict is unsupported in that answer to special issue had no evidence to sustain it considered, though no objection to special issue was made before charge was read to jury, where objection was made in motion for new trial.

2. Banks and banking ⟷188½—Transmitting bank held negligent in not informing paying bank, after miscarrying of telegram, of the condition prerequisite to payment.

Where a bank as plaintiff's agent had the defendant bank transmit money to a Chicago bank and wire that bank to pay it to a named person on his delivery of a bill of lading covering 10 automobiles, and the defendant bank had knowledge through a letter from another Chicago bank that the telegram had been misdelivered, and after knowledge thereof did not take steps to inform the original Chicago bank of the bill of lading requirement, and the money

sent was paid without securing the bill of lading, and no goods were ever received by the plaintiff in return for the money, the negligence of the defendant bank was the proximate cause of the loss, and it was liable.

3. **Banks and banking** &⟶188½—**Agreement of one bank to relieve another from liability in transmission of money held not to relieve it from its own negligence.**

Defendant bank, failing to inform a paying bank of the condition on which the money transmitted was to be paid, could not be relieved from its own negligence by the agreement of another bank as agent of plaintiff to relieve it from any loss in transmitting the money.

Appeal from District Court, Lamar County; Ben H. Denton, Judge.

Action by the Deport Hardware Company against the First National Bank of Paris, Tex. Verdict and judgment for the defendant, and plaintiff appeals. Reversed, and judgment rendered in favor of plaintiffs in the sum sued for and costs, including those of appeal.

The Deport Hardware Company, a partnership, instructed the First State Bank of Deport to have the First National Bank of Paris, Tex., remit to the National City Bank of Chicago, Ill., the sum of $5,350 to be paid to W. R. Scott upon delivery by Scott of a bill of lading for 10 Ford automobiles, the Deport Hardware Company, through its manager, wrote out and instructed the cashier of the First State Bank of Deport to have the First National Bank of Paris sign and transmit the following:

"National City Bank, Chicago, Ill. On delivery sign bill of lading covering ten new 1918 model Ford touring cars complete May and June motors consigned to Deport Hardware Company pay W. R. Scott $5350.00."

The cashier of the First State Bank of Deport phoned the cashier of the First National Bank of Paris, and directed him to remit the money for the use of W. R. Scott upon his delivering the bill of lading for the automobiles, and to charge the sum of money to the account of the First State Bank of Deport, and then read the telegram to be sent. Then the First National Bank of Paris wrote and delivered to the Western Union Telegraph Company the following telegram:

"Paris, Texas, June 24, 1918.
"National City Bank, Chicago, Ill. On delivery signed bill of lading covering ten new 1918 model Ford touring cars complete May and June motors consigned to Deport Hardware Company pay W. R. Scott fifty-three hundred fifty dollars. We remit to-day.
"[Signed] First National Bank."

The Western Union Telegraph Company promptly transmitted the telegram as worded, but the telegram was never delivered to the National City Bank, but was delivered by the telegraph company to the National Bank of the Republic of Chicago. The National Bank of the Republic of Chicago received the telegram and kept it on its files. On same date of telegram the First National Bank of Paris wrote and mailed with exchange enclosed the following letter:

"Paris, Texas, June 24, 1918.
"National City Bank, Chicago, Ill. Dear Sir: Herewith find our draft #1178 for $5350.00 account—use W. R. Scott, in payment of collection as stated above.
"Very respectfully, First National Bank."

The First National Bank of Paris, however, claimed in the evidence that the above letter, orally reproduced on the trial, as actually written had also the words, "Pay Scott $5350.00 as per our wire of June 24." The National City Bank received the above letter and answered as follows:

"Chicago, June 26, 1918.
"The First National Bank, Paris, Texas. Gentlemen: We acknowledge receipt of your letter of 24inst. inclosing your draft No. 1178 on the Seabord National Bank New York amounting to $5350.00, and which is sent to us for the use of W. R. Scott. We have informed Mr. Scott that this draft has reached us and he will no doubt request that the money be turned over to him in the course of the next few days.
"Very truly yours,
"R. B. Feussle, Assistant Cashier."

The following letter was promptly received by due course of mail by the First National Bank of Paris, written on the letter head of the National Bank of the Republic, Chicago:

"Chicago, June 26, 1918.
"First National Bank, Paris, Texas. Gentlemen: We acknowledge receipt of your telegram dated June 24 instructing us to pay Mr. W. R. Scott $5350 upon delivery by him to us of signed B/L covering ten new 1918 model Ford touring cars complete May and June motors, consigned to Deport Hardware Company, which will have our careful attention. Mr. Scott has not called up to the present writing.
"Very truly yours,
"W. L. Johnson,
"Manager Collection Department."

On July 5 the National City Bank of Chicago, not having received any further instructions from the First National Bank of Paris, paid to W. R. Scott the $5,350 without requiring a delivery of a bill of lading for the 10 Ford cars. The Deport Hardware Company never got the cars, bill of lading, any money or thing of value.

It was shown that the First State Bank of Deport was acting for the Deport Hardware Company in making the remittance, but the First National Bank of Paris was not advised of that fact any more than the word-

ing of the telegram would disclose. The First National Bank of Paris was the correspondent of the First State Bank of Deport, and the latter had an account with the First National Bank of Paris. The Deport Hardware Company had an account and deposit with the First State Bank of Deport. The First State Bank of Deport at the time charged the $5,350 to the account of the Deport Hardware Company, and the First National Bank of Paris charged the sum to the account of the First State Bank of Deport. As testified by the cashier of the First State Bank of Deport:

"The way the First National Bank of Paris came to make the remittance was just simply because we did not have a correspondent in Chicago and the First National Bank of Paris was our correspondent."

It was further testified:

"There is not any charge among our banks for remitting money; it is purely a matter of accommodation. It is not necessarily done to hold the account and get the business, but, of course, that has a bearing on it, I suppose. I don't think it is necessarily done just to hold a man's business, but it is expected of course. If you have got a deposit to make you would make it with your correspondent."

The witness further said:

"We handled a number of transactions in the course of which we made payments of money to W. R. Scott, consisting of remittances sent from various Texas banks. Most of these were conditioned upon the delivery or production of bills of lading, but some were not."

The cashier of the First National Bank of Paris testified:

"I was called over the telephone by Mr. Grant (cashier of the First State Bank of Deport) to transfer funds for the benefit of the Deport Hardware Company to the City National City Bank of Chicago. He dictated a telegram that he wished me to send to the National City Bank, and I took it down just as he instructed me to do, and protested that it was a dangerous thing to undertake to do, that it was complicated. I refused at first to undertake it, on account that we would have to use other agencies to make the payment, and that I did not want to be responsible for it. I told him I would send it only at his risk, and Mr. Grant said to send it. What I meant by his risk, if anything went wrong, the Deport bank would back me up. The Corn Exchange National Bank of Chicago is the correspondent of the First National Bank of Paris. We have never had an account with the National City Bank of Chicago, and keep no money there. * * * In sending this telegram I was representing the First State Bank of Deport and was acting under the instructions of Mr. Grant. I did just simply what he told me to do, and we had no interest in it whatever."

Mr. Feussle, assistant cashier of the National City Bank of Chicago, testified:

"I did not receive any notice from the First National Bank of Paris, Tex., of any restrictions placed on the payment of the money to W. R. Scott prior to July 5, 1918. No notice of the restriction was received prior to the payment of Scott. On July 5, 1918, the amount of the draft, $5,350, was taken out of the sundry account and placed to the credit of W. R. Scott, who has an account in his own name on the books of the bank. This was done on July 5, 1918. He drew out this amount from time to time, and it was practically all paid out to him some time during the month of July."

The Deport Hardware Company brings the suit for damages in the sum of $5,350, alleging negligence as follows:

"That said First National Bank of Paris, Texas, notwithstanding it had notice by receipt of the letters of June 26, 1918, from the National Bank of the Republic, and the National City Bank, of Chicago, that its telegram of June 24, 1918, had not been delivered to the National City Bank of Chicago, and that the National City Bank of Chicago had received the said sum of $5,350 for the use of W. R. Scott without the restrictions contained in the telegram of June 24, 1918, and that said amount would be paid to the said W. R. Scott within a few days from said date, negligently and carelessly failed to notify the National City Bank of Chicago, Ill., the bank to which said remittance of $5,350 had been made, of the restrictions on the payment of said money to the said W. R. Scott, requiring the said National City Bank of Chicago, prior to the payment of said money to said Scott, to require the said Scott to deliver to it, the said City National Bank of Chicago, for the use of Deport Hardware Company, the said bill of lading covering the 10 new model Ford touring cars as set out in the telegram of June 24, 1918, although, as plaintiffs aver, it had ample time in which to do so prior to date of payment of the money to said Scott by the National City Bank of Chicago, and that by reason of said failure and the negligence and carelessness of said First National Bank of Paris the National City Bank of Chicago on July 5, 1918, paid over the said sum of money to the said Scott without securing the bill of lading and depriving them of said sum of money and causing them to suffer a loss and damage of $5,350, with legal interest from June 24, 1918."

The defendant answered by general denial, and specially that the proximate cause of the damage sued for was negligence of the Western Union Telegraph Company, and not this defendant, and further that the defendant was not guilty of any negligence. The defendant further pleaded that the First State Bank of Deport promised and guaranteed to protect it against any loss or damage on account of the remittance, and that in the remittance the said First State Bank of Deport was acting as the agent of the plaintiff.

The case was submitted to the jury on the following special issues:

"Question 1. Was the defendant, the First National Bank of Paris, guilty of negligence in failing to take any steps to advise the National City Bank of Chicago of the restrictions placed on the payment of the $5,350 after receiving

the letters of June 26, 1918, from the National Bank of the Republic and the National City Bank of Chicago? Answer: No.

"Question 2. If you answer the preceding question Yes, then you will also answer the following questions: Do you find from a preponderance of the evidence that prior to making any remittance for the First State Bank of Deport for the benefit of the Deport Hardware Company the defendant and the First State Bank of Deport, or Joe Grant, as president of the First State Bank of Deport, made an agreement that said remittances would be made at the risk of the First State Bank of Deport? Answer: ———."

The court entered judgment in accordance with the verdict in favor of the defendant.

E. S. Connor and Edgar Wright, both of Paris, for appellant.

Long & Wortham and A. P. Park, all of Paris, for appellee.

LEVY, J. (after stating the facts as above). [1] The first assignment of error is:

"The verdict of the jury is contrary to and wholly unsupported by any evidence whatsoever, in that there is absolutely no evidence to support the answer of the jury made to the first question submitted to them by the court; the undisputed evidence showing that after the receipt of the letters referred to in the first question that the First National Bank of Paris failed to take any steps whatever to advise the National City Bank of Chicago of the restrictions placed on the payment of the $5,350, and failed to exercise any care whatever to advise the National City Bank of the restrictions placed upon the payment of said money."

The appellee objects to the consideration of the assignment because "the issue made the basis of the assignment was not excepted to before the charge of the court was read." The objection of the appellant was incorporated in the motion for new trial. The assignment is and should, we think, be considered as a complaint of the verdict, as being without sufficient evidence to support it. And the complaint is, we think, to the extent that the evidence fails as a matter of law to support the verdict of the jury. It is believed that the assignment may legally be considered. Express & Baggage Co. v. Ablon, 218 S. W. 1030.

[2] Looking at the evidence from the standpoint of the parties and the duties and liabilities of each, it fully appears that the Deport Hardware Company wanted to pay $5,350 to W. R. Scott at Chicago for 10 Ford automobiles, and selected the National City Bank of Chicago as the agency to receive and pay over the money to W. R. Scott, conditioned upon his "delivery" to that bank of "signed bill of lading, covering 10 new model Ford touring cars complete, May and June motors, consigned to Deport Hardware Company." The order for the payment of the money by the National City Bank was to be in the form of and in accordance with a telegram, which was written out by the Deport Hardware Company, and which specified the condition upon which the money was to be paid over to W. R. Scott. The First State Bank of Deport, having no correspondent at Chicago, and under instructions from the Deport Hardware Company, procured its correspondent, the First National Bank of Paris, to send the telegram, and transmit the money, as instructed. The First National Bank of Paris consented, and undertook to send the telegram and transmit the money in accordance with the terms of the instructions. The wording of the telegram received and transmitted by the First National Bank of Paris plainly disclosed to the First National Bank of Paris that the Deport Hardware Company was unwilling to have, and did not authorize, the payment of the money to Scott except upon the condition that the bill of lading for the transportation of the automobiles be delivered by Scott to the bank making the payment to him of the money. The First National Bank of Paris, having consented to make the remittance of the money in accordance with the instructions which the telegram directed and empowered it to execute, was under the legal duty to use due care and diligence in performing the task which it has set itself to do. Did the defendant bank therefore under the circumstances exercise due care and diligence? It appears conclusively that the defendant bank was informed by the receipt of the letter of June 26 signed by the manager of the collection department of the National Bank of the Republic of Chicago that said bank had received the telegram of June 24, sent by the defendant bank to the National City Bank of Chicago. The letter was on the letterhead of the National Bank of the Republic, and literally set out the wording of the telegram sent by the defendant bank to the other bank. This letter also informed the defendant bank the telegraphic order to pay the money "will have our careful attention." And the defendant bank reasonably understood from the letter of June 25 from the National City Bank of Chicago that it had not received the telegram of June 24. In this letter mention was made only of receipt of the draft, and no mention was made of the telegram or its receipt. The defendant bank knew then that the telegraph company had negligently failed to deliver to the National City Bank the telegram exhibiting to it the restrictions and conditions required for the payment of the money to Scott. And the defendant bank reasonably knew in the circumstances that on account of the misdelivery of the telegram the National City Bank of Chicago would not have information, unless further advised, of the restrictions and condition placed on the payment of the $5,350 to Scott. And it conclusively appears from the evidence that the defendant bank

did not, after knowing of the misdelivery of the telegram, take any steps to advise the National City Bank of Chicago of the condition and restriction upon the payment of the money over to Scott, and that on July 5 the National City Bank of Chicago, not having received any instructions in accordance with the telegram, paid Scott the money. The proximate cause of the loss, it would conclusively appear from these facts, was the omission on the part of the defendant bank to advise the National City Bank of Chicago, having ample time to do so after knowledge of the misdelivery of the telegram, of the condition and restriction placed upon the payment of the money to Scott. It does appear, as contended by appellee, that the letter of the defendant bank, in inclosing the draft, used the words "Pay Scott as per wire of June 24 $5350.00." Even so, the knowledge on the part of the defendant bank that the telegram had miscarried would put it upon notice and require it to discharge the duty of acquainting the National City Bank of Chicago of the instructions and condition contained in the telegram. The negligence, if any, of that bank would not avail the defendant bank, sued, as it is, for its own negligence proximately causing the loss. And the petition of the plaintiff is not holding, nor undertaking to hold, the defendant bank for any default on the part of the National City Bank of Chicago.

[3] The agreement on the part of the First State Bank of Deport to relieve the defendant bank from liability for the transmission would not, and does not, relieve the defendant from omissions negligently done by it. And no other ground of negligence than personal omission is pleaded against defendant.

The judgment is reversed, and judgment is here rendered in favor of the plaintiffs for the sum sued for, and for all costs of court and of appeal.